IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| In re: E.E., by and through his Next Friend Molly Epsey, <br><br> Plaintiff, <br><br> vs. <br><br> Eagle's Nest Foundation d/b/a Eagle's Nest Camp and Outdoor Academy, <br><br> Defendant. | Civil Action No.: 8:15-cv-2296-BHH <br><br> **ORDER AND OPINION** |

This matter is before the Court on Defendant's motion to dismiss or, in the alternative, to transfer venue. (ECF No. 17.) For the reasons set forth below, the motion is GRANTED. However, rather than dismissing this action, the Court transfers the case to the Western District of North Carolina, Asheville Division.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff E.E. ("Plaintiff") is a minor child and brings this action through his mother and next friend, Molly Espey ("Ms. Espey"). Plaintiff is a citizen and resident of Pickens County, South Carolina. (ECF No. 10 at 1.) Defendant Eagle's Nest Foundation d/b/a Nest Camp and Outdoor Academy ("Defendant") is a North Carolina non-profit educational organization. (*Id.*) Its experiential educational programs include Eagle's Nest Camp (a residential co-ed summer camp, "Camp"), The Outdoor Academy (an academic residential semester school) and Hante Adventures (educational adventure programs for teens). (*Id.*; ECF No. 20 at 2.) The Eagle's Nest Camp and The Outdoor Academy take

1

place in Pisgah National Forest, North Carolina. (ECF No. 20 at 2.) The Hante Adventures program varies in location. (*Id.*) It has taken place once in South Carolina—a two week excursion in the summer of 2009. (*Id.*)

Plaintiff attended a semester at The Outdoor Academy in Spring 2015. (ECF No. 10 at 5.) During this time, Defendant extended Plaintiff an offer to be a Junior Counselor for the 2015 Summer Program at Eagle's Nest Camp. (*Id.* at 3–5.) However, Plaintiff alleges that Defendant rescinded the offer after learning of texts Plaintiff sent concerning his depressive feelings. (*Id.* at 3.) Citing concerns for Plaintiff's mental health, Defendant prohibited Plaintiff from attending the Eagle's Nest Camp, communicating with anyone in the Camp, or stepping foot on Defendant's property without prior written approval. (*Id.* at 4.) Plaintiff alleges that after the texting incident, Defendant required Plaintiff to sign an invasive care plan in order to return to the Outdoor Academy. (*Id.* at 5.) According to Plaintiff, both his ban from the Camp and the care plan were discriminatory and caused him to suffer emotional distress. (*Id.* at 5–6.) Plaintiff seeks remedies under the Americans With Disabilities Act, 42 U.S.C. § 1201, *et. seq.* (*Id.* at 6.)

On September 9, 2015, Defendant moved to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). (ECF No. 17.) Specifically, Defendant asserts that the Court lacks personal jurisdiction in this case and that the venue is also improper. (*Id.* at 1.) In the alternative, Defendant asks that the Court transfer venue in this case to the Western District of North Carolina, Asheville Division. (*Id.* at 1–2.) Plaintiff filed a response on September 28, 2015 (ECF No. 19), to

which Defendant replied on October 8, 2015 (ECF No. 20). The Court has reviewed the briefing and the applicable law, and now issues the following ruling.

## STANDARD OF REVIEW

When a court's personal jurisdiction is challenged, the burden is on the plaintiff to establish that a ground for jurisdiction exists. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When the court resolves the motion on written submissions (as opposed to an evidentiary hearing), the plaintiff need only make a "prima facie showing of a sufficient jurisdictional basis." *Id*. However, the plaintiff's showing must be based on specific facts set forth in the record. *Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). The court may consider the parties' pleadings, affidavits, and other supporting documents but must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in his favor, and assuming plaintiff's credibility." *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 404-05 (D.S.C. 2012) (internal quotations omitted); *see also Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) ("In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff."). However, a court "need not credit conclusory allegations or draw farfetched inferences." *Sonoco*, 877 F. Supp. 2d at 205 (internal quotations omitted).

To meet his burden, Plaintiff must show (1) that the exercise of jurisdiction is authorized by the long-arm statute of the state and (2) that the exercise of personal jurisdiction complies with the constitutional due process requirements. *E.g., Christian*

*Science Bd. Of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). South Carolina has interpreted its long-arm statute to extend to the constitutional limits of due process. *See Southern Plastics Co. v. Southern Commerce Bank*, 423 S.E.2d 128, 130-31 (S.C. 1992). Thus, the first step is collapsed into the second, and the only inquiry before the Court is whether the due process requirements are met. *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 (D.S.C. 1999).

Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This standard can be met in two ways: "by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." *E.g., ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

A court can assert general jurisdiction over business entities only when the "continuous corporate operation within a state is thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2853–54 (2011) (holding that the "paradigm forum for the exercise of general jurisdiction" of a corporation is "one in which the corporation is fairly regarded as at home"). Thus, general jurisdiction requires a showing that "the defendant's activities in the state" were

4

"continuous and systematic." *Carefirst*, 334 F.3d at 397 (quotation marks and citation omitted).

To determine whether specific jurisdiction exists, the Court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003)). This three-part test is designed to protect a defendant from having to litigate a suit in a forum where it should not have anticipated being sued. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277–78 (4th Cir. 2009).

## DISCUSSION

### A. General Jurisdiction

Plaintiff argues that both general and specific jurisdiction exists here. The threshold level of minimum contacts necessary to confer general jurisdiction is significantly higher than that required for specific jurisdiction. *See Helicopteros*, 466 U.S. at 414 nn. 8–9. To establish general jurisdiction, the plaintiff must show that the defendant "maintains 'continuous and systematic' contacts with the forum state." *LSI Indus.*, 232 F.3d at 1375 (citing *Helicopteros*, 466 U.S. at 414–16). Thus, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 131 S. Ct. at 2853–54.

Summarizing the Supreme Court's rationale in *International Shoe*, the Fourth Circuit has stated,

> "Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction]." Even "continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction over the corporation]." Only when the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a court assert general jurisdiction over a corporate defendant.

*Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (alterations in original) (quoting *Int'l Shoe*, 326 U.S. at 317, 318). The Fourth Circuit has also stated that "broad constructions of general jurisdiction should be generally disfavored." *Nichols*, 991 F.2d at 1200; *see also Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 550 (E.D. Va. 2004) ("[I]t is clear from the relative scarcity of cases permitting the assertion of general personal jurisdiction over a nonresident corporation that the standard for imposing general jurisdiction is high.").

Here, the Court finds that Defendant's alleged activities in South Carolina do not constitute the minimum contacts required for general jurisdiction. Defendant is not organized under the laws of South Carolina and does not own any property or maintain any businesses in South Carolina. (ECF No. 17 at 2.) Plaintiff alleges that Defendant has directly recruited program participants in South Carolina through "a series of in person presentations" as well as through its "agents." (ECF No. 19 at 9.) By affidavit, Ms. Espey avers that she served as Defendant's agent in her role as a "Camp Representative" for the Upstate of South Carolina from 2009 through 2012. (ECF No. 19-1 ¶ 2.) She has attached documents relating to her service as a Camp Representative, including her

6

signed contracts to be a representative from Fall 2009 through Summer 2011, as well as a document titled "Eagle's Nest Camp and Hante Adventures Representative Responsibilities." (ECF Nos. 19-2; 19-3; 19-4.)

These documents reveal a collaborative relationship between Camp Representatives and Defendant, in which representatives are given incentives in the form of tuition discounts for successfully recruiting new camp participants. For example, a Camp Representative's responsibilities include to "serve as an ambassador for Eagle's Nest whenever possible" and to "host or help organize one presentation or alumni gathering inviting both alumni and new prospects . . . [where] an Eagle's Nest administrator will attend to give the presentation and speak with potential camp families." (ECF No. 19-4.) For these "camp presentation part[ies]," representatives are expected to send personal invitations and provide pizza as well other light refreshments—these expenses are reimbursed by Defendant. (*Id.*) In addition, as a representative, Ms. Espey agreed, *inter alia*, to have her contact information "listed in materials sent to prospective families so that they may contact [her] if they have questions about [her] child's experience at Eagle's Nest Camp" and "to house Eagle's Nest Administrators for 1-2 nights in [her] house if needed and space provides." (ECF No. 19-2.)

Defendant, through the affidavit of its Executive Director, Elizabeth Waite-Kucera ("Waite-Kucera"), avers that Defendant's Camp Representatives "are in no way agents of the Foundation or any of its programs." (ECF No. 20-1 ¶ 4.) Waite-Kucera characterizes the "Camp Reps" as volunteers who host casual pizza parties for individuals that may be interested in learning more about the Camp. (*Id.*) She attests that there were no Camp

7

Representatives in South Carolina during the Fall 2014 to Spring 2015 academic year and that Ms. Espey "has not hosted a 'Camp Rep' party since January 2010." (*Id.*) Waites-Kucera further avers that only one Camp Representative party has taken place in South Carolina in the last five years—March 2012 in Spartanburg. Ms. Espey does not dispute this in her affidavit.

The Court finds that Defendant's use of "Camp Representatives" is akin to an advertising or solicitation activity, and reserves its discussion of the alleged agency relationship for the specific jurisdiction analysis. Likewise, Plaintiff's general allegation that "Defendant has made a series of in-person presentations at both secondary and post-secondary institutions in South Carolina within the last few years" indicates further solicitation activity by Defendant.[1] (ECF No. 19 at 9.) Given that the Fourth Circuit has repeatedly found corporate advertising and solicitation activities alone do not constitute the minimum contacts required for general jurisdiction, and that only one Camp Rep party has taken place in South Carolina in the last five years, the Court finds that Defendant's collaboration with Camp Representatives does not establish general jurisdiction here.[2] *See, e.g., Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993) ("[A]dvertising and solicitation activities alone do not constitute the 'minimum contacts' required for general jurisdiction."); *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) ("When . . . defendant's only activities consist of advertising and employing salesmen to solicit orders, we think that fairness will not permit a state to

---

[1] Plaintiff provides no evidence to support this assertion, and Defendant disputes the allegation.
[2] The Court extends this finding to Ms. Espey's declaration that Defendant came to Clemson University in 2010 to solicit participants and funds, as well as Plaintiff's allegation that Defendant held a recruitment session in Greenville, South Carolina on October 20, 2014. (ECF Nos. 19 at 3; 19-1 ¶ 3.)

assume [general] jurisdiction." (quoting *Seymour v. Parke, Davis & Co.*, 423 F.2d 584, 587 (1st Cir. 1970)).

Plaintiff does not otherwise allege any type of continuous and systemic operation that justifies the exercise of general jurisdiction over Defendant. Defendant asserts that the remaining extent of its contact with South Carolina is as follows: (1) The Outdoor Academy participants have attended two dances near Cleveland South Carolina, one in March 2012 and one in April 2015; (2) Eagle's Nest Camp passes through South Carolina once a year on its way to and from a week-long excursion in Georgia; and (3) Eagle's Nest Camp has held one activity in South Carolina in the past five years—a picnic in Greenville, South Carolina in July 2015. (ECF No. 20 at 3.) Such contact does not render Defendant to be "at home" in South Carolina. *See Goodyear,* 131 S. Ct. at 2853–54. Accordingly, the Court finds that Plaintiff has not made a showing of "continuous and systematic" operation by Defendant in South Carolina that would subject it to general jurisdiction in this Court.

### B. Specific Jurisdiction

Having found that Defendant's contacts with South Carolina are not continuous and systematic enough for the Court to exercise general jurisdiction over Defendant, the Court now considers whether the causes of action asserted by Plaintiff arise as a result of Defendant's contacts with South Carolina. Plaintiff asserts that specific jurisdiction exists under the following provisions of the South Carolina long-arm statute:

(1) transacting any business in this State;

(2) contracting to supply services or things in the State;

(3) commission of a tortious act in whole or in part in this State;

(4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State;

. . .

(7) entry into a contract to be performed in whole or in part by either party in this State;

S.C. Code Ann. § 36–2–803. Importantly, "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." S.C. Code Ann. § 36-2-803(B). As previously stated, South Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause. *See Southern Plastics Co.*, 423 S.E.2d at 130–31.

Here, the Court must examine three factors to determine whether specific jurisdiction is appropriate: First, to what extent did Defendant "purposefully avail" itself of the privileges of conducting activities in South Carolina and thus invoke the benefits and protections of its laws; second, did Plaintiff's claims arise out of those South Carolina-related activities; and, finally, is the exercise of jurisdiction constitutionally "reasonable." *Carefirst*, 334 F.3d at 397.

As an initial matter, although Plaintiff appears to argue that specific jurisdiction is established through Ms. Espey's "agency relationship" with Defendant, Plaintiff provides no argument or supporting authority for such a claim. (ECF No. 20 at 11.) Although Plaintiff does not specify, the Court understands his argument to be that in contracting with Ms.Espey to be a Camp Representative in South Carolina, Defendant "purposefully

s[ought] business in South Carolina." (ECF No. 19 at 3.) The Court agrees that while such conduct suggests direct action by Defendant in creating a connection to South Carolina, the connection does not rest on any alleged agency relationship. Rather, the connection arises simply from Defendant working with Ms. Espey to recruit potential campers in South Carolina—the allegation does not require the Court to employ an agency analysis.[3] To the extent Plaintiff alleges that Defendant has "other agents" in South Carolina, his causes of action do not arise from alleged collaboration with these "other agents." Accordingly, the Court does not reach the issue of whether Defendant's use of Camp Representatives in fact created an agency relationship.

Although the Court finds that Defendant took direct action in South Carolina through its collaboration with Ms. Espey as a Camp Representative, Plaintiff does not allege that his claims arise out of this contact. Although Plaintiff claims that he used the tuition discounts Ms. Espey received for his tuition to Defendant's programs, he does not allege that he used the discounts for the programs at issue in this case.[4] (ECF No. 19 at 3.) Further, Plaintiff's claims do not relate to his mother's service as a Camp Representative. Thus, the Court cannot find that specific jurisdiction arises out of this contact. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278–79 (4th Cir. 2009) (specific jurisdiction "requires that the defendant's contacts with the forum state form the basis of the suit").

---

[3] Indeed, as discussed in the general jurisdiction section, it appears that Ms. Espey and Defendant worked together in a collaborative manner to recruit camp participants in South Carolina. The solicitation was not merely through the *unilateral* actions of Ms. Espey.

[4] In addition, because Ms. Espey was last a camp representative in 2012, it is unlikely that she would have used the tuition discounts for programs that began years later in 2015.

Plaintiff also contends that specific jurisdiction exists because the contract that forms a basis for his claim was partially formed in South Carolina. (ECF No. 19 at 8.) Specifically, Plaintiff contends that after he applied to be a Junior Counselor at Eagle's Nest Camp, Defendant offered him the position via a letter sent to Plaintiff's home in South Carolina. (*Id.* at 4, 8.) Plaintiff alleges that he accepted the offer and tendered consideration in the form of a check mailed from his home to cover the cost of his attendance. (*Id.* at 4, 8–9.) According to Plaintiff, he then "became depressed and engaged in some self-hurting activities" while at The Outdoor Academy in North Carolina. (*Id.* at 3.) Plaintiff alleges that Defendant then revoked Plaintiff's participation in the Junior Counselor program via a letter mailed to his parents in South Carolina. (*Id.* at 4.)

If personal jurisdiction is allegedly based on a single contact, courts commonly look to factors that include: (1) where the contracting and negotiations occurred; (2) who initiated the contact; (3) the extent of the communication; and (4) where the contractual obligations were to be performed. *See, e.g.*, *Affinity Memory & Micro, Inc. v. K & Q Enters.*, 20 F.Supp.2d 948, 952 (E.D. Va. 1998).

Here, the "offer letter" was delivered to South Carolina, which Plaintiff signed and mailed back to Defendant, along with payment for the position. Thus, the Court agrees with Plaintiff that "part of the contract was formed in South Carolina." However, the acts contemplated by the alleged contract, i.e., Plaintiff's participation as a Junior Counselor, were to have been performed in North Carolina. In addition, Plaintiff initiated the contact with Defendant as to this matter by first applying to be a Junior Counselor. Also, the

12

parties' communications as to Plaintiff's application and the subsequent contract were not extensive. Further, the actions of Defendant giving rise to Plaintiff's claim occurred in North Carolina; specifically, Defendant's decision that Plaintiff could no longer be a Junior Counselor.

Other courts have declined to find specific jurisdiction based on similar allegations. *See Stuart v. Spademan*, 772 F.2d 1185, 1193–94 (5th Cir. 1985) ("[A]n exchange of communications between a [forum] resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws."); *Superfos Invs. Ltd. v. Firstmiss Fertilizer, Inc.*, 774 F. Supp. 393, 398 (E.D. Va. 1991) (stating that "due process requires that there be more than a simple connection between the contract which is being sued upon and the state asserting jurisdiction"); *Eagle Aviation, Inc. v. Galin*, 761 F. Supp. 405, 407 (D.S.C. 1989) (finding no specific jurisdiction where the plaintiff initially contacted the defendant, "[n]o acts contemplated by the alleged contract were to have been performed in South Carolina," and the breach alleged occurred in Connecticut); *Processing Research, Inc. v. Larson*, 686 F. Supp. 119 (E.D. Va. 1988) (finding Virginia had no personal jurisdiction over a Colorado seller of an airplane where the negotiations involved a series of telephone calls initiated by both parties, plaintiff sent a down-payment from Virginia to defendant, and performance of the contract occurred outside Virginia). The Court therefore finds that the above contact alleged by Plaintiff does not establish minimum contacts sufficient to subject Defendant to specific personal jurisdiction in South Carolina.

Plaintiff also alleges that specific jurisdiction is warranted under S.C. Code Ann. § 36-2-803(4) because Defendant "regularly does or solicits business" in South Carolina. Here, he relies on allegations that Defendant has a "member school" in Columbia, South Carolina, and "has made a series of in-person presentations at both secondary and post-secondary institutions in South Carolina within the past few years." (ECF No. 19 at 9.) Ms. Espey's affidavit only reveals one instance of Defendant visiting an educational institution, over five years ago. (ECF No. 19-1 ¶ 3.) Plaintiff provides no explanation of what a "member school" is and offers no other support for his general allegation that Defendant has recently made presentations in South Carolina—an allegation Defendant denies. Although Plaintiff asserts that Defendant held a recruitment session in Greenville, South Carolina on October 20, 2014, his claims do not arise out of this alleged contact. (ECF No. 19 at 3.) Indeed, none of the alleged solicitation by Defendant in South Carolina forms the basis of Plaintiff's suit. Accordingly, the Court cannot find specific jurisdiction exists under § 36-2-803(4).

Plaintiff also repeatedly asserts that specific jurisdiction exists because Defendant's discriminatory actions arose from events that allegedly occurred in South Carolina. (ECF No. 19 at 9–10.) According to Plaintiff, Defendant stated in a letter to Plaintiff that "its decision to breach the contract arose out of acts allegedly arising at Plaintiff's home in South Carolina." (*Id.* at 10.) The Court cannot find any such letter in the record and isn't sure what acts Plaintiff is referring to—the Court infers that Plaintiff had a depressive episode in South Carolina, which Defendant later learned about. Regardless, personal jurisdiction is based on the *defendant's* contacts with the forum

14

state, and Plaintiff's allegation here does not establish any direct action in South Carolina by Defendant. *See, e.g., Helicopteros*, 466 U.S. at 417 (1984) (sufficient minimum contacts do not include those that are the product of the "unilateral activity of another party or a third person"). Thus, the Court cannot exercise specific jurisdiction on this basis.

As a final matter, the Court finds that it would not be reasonable to subject Defendant to the Court's jurisdiction where Defendant does not have a systematic and continuous presence in South Carolina and where Plaintiff's causes of action arise largely from actions taken by Defendant in North Carolina. To hold otherwise would not be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

### C. Venue

Having found that the Court lacks personal jurisdiction over Defendant, the Court declines to dismiss this action and instead, exercises its discretion to transfer venue pursuant to 28 U.S.C. § 1406(a). *See, e.g., Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 (4th Cir. 1993) (finding that the decision to transfer venue pursuant to § 1406(a) rests within the sound discretion of the district court); *Harley v. Chao*, 503 F. Supp. 2d 763, 774 (M.D.N.C. 2007); ("Rather than dismissing for improper venue, courts favor finding that it is in the interest of justice to transfer venue."); *Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F. Supp. 2d 468, 473–74 (D. Md. 2002); *Jennings v. Entre Computer Ctrs., Inc.*, 660 F. Supp. 712, 714 (D. Me. 1987). Section 1406(a) "authorizes the transfer of a case to any district, which would have had venue if the case

were originally brought there, for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district." *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988). This section is to be interpreted broadly to effectuate its broad remedial purpose. *Id.* at 257–58. Here, Defendant has indicated it will consent to a transfer of venue to the Western District of North Carolina, Asheville Division. (ECF Nos. 17 at 7; 20 at 12.) Because venue and personal jurisdiction are proper over Defendant in that district and division, the Court transfers Plaintiff's case to the Western District of North Carolina, Asheville Division. *See* 28 U.S.C. § 1391(b)(1); N.C.G.S.§ 1–75.4(1)(d).

## **CONCLUSION**

For the foregoing reasons, the Court finds that it cannot exercise jurisdiction over Defendant. However, rather than dismissing this action, the Court transfers the action to the Western District of North Carolina, Asheville Division.

**AND IT IS SO ORDERED.**

s/Bruce Howe Hendricks
United States District Judge

Greenville, South Carolina
July 29, 2016